1-22-1835 W.C. Patrick McDonough, Appellant by Michael Greco v. Illinois Workers' Compensation Comm'n. City of Chicago, Appalee by Auxa Gregalunas. Mr. Greco? Thank you, Your Honor. May it please the Court, Justices, and Counsel, as well as the Clerk. I am Michael Greco, and I represent the Petitioner Appellant Patrick McDonough, in this case. He was an employee of the City of Chicago in July of 2011, when he experienced a physical altercation that had also resulted in psychological injuries. That claim was filed September 27th of 2011. Subsequently, he was still working on September 17th of 2013, when he had his foot run over by a city vehicle. On the job, he injured his left foot, leg, back, and neck. He initiated that application for adjustment of benefits on November 14th of 2013. The cases were consolidated in 2016, and there were four dismissals for warrant of prosecution. At the time of the final dismissal for warrant of prosecution, that's the focus of the petition for reinstatement that was denied. The cases were pending for seven and a half years in the case of the July 2011 accident, and for a little under five and a half years in the case of the 2013 accident. So, there's no question that the cases were pending for a long time. The crux, obviously, of the review is the petitioner's diagnosis and affliction with this panic disorder that he's described. He provided a prescription from his treating psychiatrist, Dr. Andrew Pundy, in 2018. I believe the first time was June of 2018, when he did not appear for trial, June 7th, 2018. He did participate in initiation of trial in September of 2018, but he was unable to continue. The cases continued to November 27th of 2018, and McDonough had another note or prescription from Dr. Pundy, indicating that the panic disorder effectively disabled him from receiving the trial, and he directed that Mr. McDonough pursue a course of treatment that would take about three months. The cases continued to February 27th, 2019, and Mr. McDonough did not appear for trial. He had not undergone the course of treatment that had been prescribed by Dr. Pundy as of that date, and so we did file a timely petition for reinstatement, but at the hearing of that petition for reinstatement, the arbitrator found that it had gone on too long. There were additional records that Mr. McDonough was convinced that there were additional records from the medical that we needed to secure, and so we did want to obtain those records, but Mr. McDonough would have been able to proceed the trial in some way, but not within the time period that the arbitrator had directed would be necessary, and so the petition for reinstatement was denied. The case law covering this type of situation, apart from the panic disorder, is pretty clear. I think Apelli and I have both cited the Banks case, the Brownberg case, and the Conley case. This scenario, I submit, is somewhat distinct in as much as there is a psychological disability that Mr. McDonough is identifying, that his psychiatrist identified the panic disorder, disabling him from participating in trial, and so one of the requests for relief to this court is a remand for rehearing of the petition for reinstatement to conduct an evidentiary hearing if necessary to provide the evidence from the psychiatrist that as of February 27, 2019, Mr. McDonough was so afflicted with the panic disorder and was disabled to proceed to trial. I couldn't find a case law that was immediately directed to this type of issue within the reinstatement cases or within the commission regulations. We submit that we have provided cause for such an inquiry and hearing, and that it should be afforded to Mr. McDonough. Mr. Greco, who's Dr. Pundy? Dr. Pundy is a treating psychiatrist. He had provided treatment to Mr. McDonough early after the 2011 accident, and Mr. McDonough again consulted him in 2018, but he's the treating psychiatrist. There was a significant time period when he was not treating with Dr. Pundy. Did he write a note or something? He wrote a note, yes, that's correct. Where would the court find that? It should be in the administrative record. Unfortunately, it's not in the record on appeal before this court. Why is it unfortunate when it's a rule that requires you to have the arbitrator's decision as part of the record? It's the arbitrator's decision is part of the record, Judge. The commission decision, I'm sorry, Judge. Where is it? The arbitrator's decision, I believe that that is not part of the record, Judge. And so you violated Supreme Court Rule 342. I apologize for that, Judge. Apology doesn't make it. Is this your second case this court called? Or am I mistaken? Sorry, Judge. Is this your second case on this court call, or am I mistaken? I had one yesterday before, Your Honor. Were there troubles with that record that were raised by the court in that case? There was. Okay. Do you realize that you are required under the rules to have the arbitrator's decision in this case, and it's not there? Yes, I do acknowledge that. I would ask Steve to supplement the record. It's a little late, quite frankly. And, you know, we're having to rely on other aspects of this case.  Which is our obligation of this entire case. That's why there's a Rule 342. Yes. I think from now on, I think opposing counsel probably should examine as well the brief that they're having to respond to. And if it's insufficient, I think the court would welcome a motion to dismiss. Of course, the court can always do that. But this is the second time, Mr. Greco, and I wish to caution you to attend some CLE seminars which talk about following the Supreme Court rules and how to properly present, process, and appeal of the record. But we'll let you continue on now. Thank you, and I take your Honor's admonition. But in any event, we submit that the commission did consider this as well as the lack of medical records that is surrounded the note from Dr. Pundy regarding the panic disorder diagnosis and the recommendation for the three-month course of treatment. Counsel, is my reading of the record correct? This wasn't the first time this case was DWP'd. It was the fourth time. That is correct, Judge. Yes, it was the fourth time. How long do you think the commission is supposed to put up with this? These DWPs. That's a problem, Your Honor. That is the question. I began representing Mr. McDonough in the end of 2017, and so two of the DWP events were while I was representing him. The first was June 7, 2018. Mr. McDonough did not appear for trial, and then it was reinstated following that. But there were two additional other DWPs prior to my entry into the case. So, I don't believe there is no satisfactory justification for orders of DWP. Just so that I'm clear, to your knowledge, I mean, your client, prior to your involvement and afterwards, he's always been given proper notice of the hearings. Is that correct? Yes, he has. He was aware of these hearings. And so it was just the fact that he wasn't able to appear, didn't appear, he blames on the condition that he suffers from as opposed to, you know, just forgetting about it or not knowing about it or anything like that. Is that correct? It's correct, Judge, yes. In any event, we submit that the indication and the evidence before the commission was that he did suffer from this panic disorder, at least from the perspective of Dr. Bundy's report, and that if he were suffering from that panic disorder, that could be explored in an evidentiary hearing before the arbitrator. So, for that reason, we've maintained that reversal, well, that vacatur of the commission order and reinstate and remand, if only for the purpose of rehearing of the motion to reinstate is justified. Well, you're talking about an evidentiary hearing, right? Yes. Before? Okay. Well, what would that hearing look like? Who has to be present? The doctor that identified the panic disorder, I would say, as well as Mr. McDonough, if he's able. But I think it's demonstrated Mr. McDonough is, I mean, what makes you think he'll show up for that? That's a question, Your Honor, and I believe that he, I know from my contact with him that he does want to pursue the case, and so, if only for that, I believe that he would. He was at the hearing. So, you're asking for one more bite at the apple to see if he shows? Essentially, yes, that is correct. He did show, he was present at the hearing of the petition for reinstatement on June 20th of 2019, which was, at that time, reinstated. And why didn't you proceed to an evidentiary hearing at that time? It was, the contemplation from the arbitrator was that Mr. McDonough would proceed to trial within two weeks or three weeks, and Mr. McDonough was extremely resistant to that, and he just would not authorize that. I couldn't, I asked for a longer time period to get him into court, but the arbitrator did offer conditions which were not accepted by Mr. McDonough, which we could not accept from Mr. McDonough's perspective. So, it's your hope and belief that with the evidentiary hearing, the medical testimony could explain the non-appearances and convince the court to set aside the sound, or the decision of the commission, and find abuse of discretion? That is, and I, right, correct, Judge. That's the only thing that I would, that I could really ask for at this time, as far as I can see. Obviously, with the four dismissals for want of prosecution, there would be a justification. However, in the unique justification for the commission's upholding the denial of the petition for reinstatement. In this, in this particular case, with the diagnosis of the panic disorder, I'd submit that there is a basis to conduct a thorough hearing or an evidentiary hearing into that, but that was not, that was not pursued at that, at that time in 2019, too. I, again, I couldn't find a case law that specifically addressed this type of situation, but I would, that would be my request. And thank you. You'll have time in reply, Mr. Greco. Yes, Judge. Thank you. All right. Ms. Gregaliunas, am I close again? Second time's a charm, Your Honor. You may proceed. Thank you. May it please the court. My name is Alexa Gregaliunas, and I represent the appellee, the city of Chicago. At this time, I would respectfully request that this honorable court affirm the decision of the Illinois Workers' Compensation Commission or dismiss this appeal with prejudice. Again, I realized while preparing my brief that the transcripts were not made part of this record before this court, and there were actually about four transcripts produced during these proceedings. As such, my argument is essentially that there is no evidence in the record presented to this court upon which to reverse the commission's decision or even remand it. Even if this court wishes to consider the facts of the case, I would argue that there is no reason to do so. The sole issue in this matter is whether or not a petition to reinstate was properly denied by the commission. This court in Conley v. Industrial Commission held that whether a petition to reinstate is granted is within the sole discretion of the commission, and I believe this is nearly an impossible standard for the petitioner to overcome, even with a complete record. That said, there were myriad reasons why the commission upheld the arbitrator's denial of the petitioner's petition to reinstate, not the least of which is that the petitioner never engaged in any activities showing that they were prepared or even preparing to proceed to trial in almost nine years. In the Banks case that I cited in my brief, that claim was only pending for about five and a half years before it was dismissed, which is only about half the time that this case has been pending. Counsel brings up the petitioner's psychological condition, but there's no evidence that the petitioner did anything to treat for that condition, to improve, to heal, in order to prosecute his case in almost the one year following the production of this alleged note that he discusses. There were no other steps made to take the matter to a hearing, such as issuing subpoenas or taking depositions or anything. I never received any exhibits, nothing. As far as medical testimony goes, he indicates that if we were to proceed to an evidentiary hearing regarding the psychological issue, that he would need to produce Dr. Pundy, but he could have done that in the eight months between producing that note and this matter being dismissed and then not reinstated. I don't believe that even if additional time was given to the petitioner to produce Dr. Pundy or to have him author a narrative report or to take his deposition or produce him at trial, I just don't think it's going to happen because it didn't happen in the almost one year that he had between producing that particular note, the case being dismissed, and then the case being up for reinstatement. At all of these steps, we took transcripts, they had the opportunity to produce Dr. Pundy, that did not occur. Is there any evidence in the record before us suggesting what the diagnosis of PTSD is based on? I don't think it's in the record before you. I don't think there's a record of proceedings. I don't think that Dr. Pundy's note is in there. I'm not sure what it's based on or what the treatment protocol is or what he's been doing. And even if there was a note indicating that he couldn't participate in trial, there's no indication that he could not participate in a deposition or that the trial needs to be put on hold because subpoenas can't even be issued. There's a lot of ways to proceed with a trial, and there's a lot of ways to prepare for a trial. And in this case, none of that had occurred during the entire pendency of Mr. Greco's and my representation of the respective parties. So, I am a little curious on the PTSD, if it's based on the accident or the event that or, you know, police veteran. I mean, do we know anything more that we have records of or not? I am not aware. I have not seen any records. Counsel alluded to the fact that he was treating with Dr. Pundy during the initial treatment following the 2011 accident, but I have not seen those records. So, this 2018 note that was produced was kind of out of the blue and did not contain a causation opinion. There is no history that I'm aware of, of PTSD. This is the first I had heard in this case, Your Honor. Thank you. If there's no other questions from Your Honor, in conclusion, the City of Chicago would respectfully request that based on the lack of evidence in the certified record, but also based on the lack of effort on behalf of the petitioner to prosecute his claim for nine years, that this honorable court affirm the decision of the Illinois Workers' Compensation Commission. Alternatively, I would request that this appeal be dismissed with prejudice in light of the lack of the record before you. Thank you. Any questions from the court? None. Thank you. Counsel? Mr. Greco, you may reply. Thank you, Your Honor. Just to be clear, it was about seven and a half years from the filing of the first validated case until the dismissal, final four dismissals for honor prosecution on February 27, 2019. But again, even conceding that, that is a long time in terms of these types of cases. We don't dispute that. Do you have anything to add to the question that I asked of your opposing counsel just now about the PTSD? Yes, Justice. What was identified by Dr. Pundy was a panic disorder. I think that there was no reference really to PTSD at that time. He was speaking about a panic disorder. Um, there was exploration in the early records, but not a firm diagnosis of PTSD. I don't know Mr. McDonough to be a veteran. In your brief on page seven, it says that the petition to reinstate the claims following dismissal of February 27, 2019 was denied, even though plaintiff produced a report from psychiatrist, Dr. Andrew Pundy of Park Ridge, Illinois, noting that petitioner was under Pundy's care for major depression, post-traumatic stress disorder, and panic disorder. Um, I'm just wondering, do you know anything about the PTSD and what it was based on when it, when it happened, when it originated, anything of that nature? I don't think that was one of the possible diagnoses or indications, but the panic disorder was a specific basis of Dr. Pundy's report that... Right. It goes on to say due to his panic disorder, trial, contested hearing, blah, blah, blah. But, uh, uh, he does apparently mention, or at least your report or your brief mentions the PTSD. So I didn't know where that came from. Yes. Yeah, it's indicated, but, uh, the, the report is really what we have from Dr. Pundy as far as to his diagnosis. And, uh, we, we do concede that the abuse of discretion standard, um, offers substantial deference to the commission opinion. Again, I just submit that without, I, I can't argue that they have, that the commission had no basis for their ruling or that they did not have, uh, that the ruling was not their discretion in the circumstances of this case. I don't believe that the panic disorder report was sufficiently addressed by the commission. And so for that reason, I would submit that there is a basis to find an abuse of discretion. As far as alternative means of, um, proceeding with the case, we did attempt to, uh, introduce Mr. McDonald's testimony on September 27, 2018. We, he testified for about 15 minutes and then he said he was unable to do so. There was action to move the case forward, but unfortunately it did not culminate with Mr. McDonough appearing on November 27th or on, um, uh, or on September 27th, February 27th of 2019. So that is what resulted in the final dismissal on the prosecution. And then we do concede that, well, but, uh, but again, just, just because of the panic disorder diagnosis, a, uh, an evidentiary hearing would be justified. Thank you. Okay. Uh, no further questions. Could I ask, what was it that prevented the kind of evidentiary hearing that you'd like to have if we were to remand this? Nothing prevented it. It's, uh, it wasn't one of the, uh, it wasn't what was discussed by the arbitrator. And I'm sorry that the record was DWP, uh, February 27th. Then you filed the motion to reinstate March 26, right? Correct, Judge. And then the hearing was in June. So, I mean, at that point, uh, you were certainly on notice that you were going to have to produce some reason, correct? Yes, that's correct, Your Honor. The, uh, the, the note from Dr. Fundy was what we had, but I'm sorry, I did not request an evidentiary hearing at that time. Thank you. Thank you. Uh, thank you, Mr. Greco. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement and written disposition shall issue.